NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHAEL MRAZ,** | **Civil Action No. 13-899 (CCC)** |
| **Plaintiff,** | |
| **v.** | |
| **LOCAL 254 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICAL, *et al*.,** | **REPORT & RECOMMENDATION** |
| **Defendants.** | |

**FALK, U.S.M.J.**

Before the Court is Plaintiff's motion to remand this case to state court. The motion is opposed. No argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, it is respectfully recommended that Plaintiff's motion be **granted**.

### BACKGROUND

Plaintiff, Michael Mraz, is a former member of Defendant, Local 254 of the United Brotherhood of Carpenters and Joiners of America ("Local 254" or "Union").[1] Local 254 is a local labor organization that represents members in negotiations with

---

[1] Because the Complaint refers to the United Brotherhood of Carpenters and Joiners of America, Local 254 as one entity, the Court will refer to them collectively and interchangeably as one entity for purposes of this motion.

employers for carpenter trade work.  (Compl. ¶ 3.)   Defendant, Eustace Eggie, III,

("Eggie") was a member of Local 254 and chairman of its trial committee.  (Compl. ¶ 4.)

Defendant, Michael Capelli, ("Capelli") was an officer of Local 254.  (Compl. ¶ 5.)[2]

    Plaintiff worked as a union carpenter for many years as a member of Local 254.

Local 254 negotiates agreements with employers to fill labor requirements on

construction projects.  (Compl. ¶ 3; Plaintiff's Brief in support of remand ("Pl.'s Br.") 3.)

Eggie and Capelli directly negotiated the terms of employment of its individual members,

including Plaintiff. (Id.)

    According to the Complaint, in November 2011, Plaintiff provided information to

the United States Department of Justice ("Justice Department") alleging that Defendants

were engaged in illegal transfers of money.  (Compl. ¶ 6.)  In addition, Plaintiff made

several specific complaints directly to officers and officials at Local 254 regarding its

alleged misappropriation of funds.  (Compl. ¶ 7.)  Plaintiff claims that as a result of his

whistle-blowing activity, Eggie and Capelli harassed Plaintiff and filed false

administrative charges against him seeking to terminate his membership.  (Compl. ¶ 9.)

---

[2]Defendants dispute many of the facts alleged in the Complaint, including the positions and titles held by Eggie and Capelli. Specifically, Defendants maintain that neither Capelli nor Eggie are members, officers or employees of the Local 254; rather,  they contend that each were associated with the Northeast Regional Council of Carpenters ("NRCC"). (Defendants' Brief in Opposition to Remand ("Def.'s Br.") 3,  n.2 and 3.)   For purposes of this remand motion, the Court will assume all factual allegations contained in Plaintiff's Complaint are true. Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc., 809 F.2d 1006, 1010 (3d Cir. 1987).

On February 3, 2012, following a meeting of the Union's trial committee,[3] Defendants advised Plaintiff that he was expelled from the Union.[4]

On January 15, 2013, Plaintiff filed a four-count Complaint in state court asserting claims for retaliatory discharge under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq*. ("CEPA"), New Jersey's whistle-blower statute, and *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (1980), as well as a cause of action for discrimination under New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* Plaintiff alleges that as a result of his expulsion, he has been deprived of his ability to work as a union carpenter. (Compl. ¶ 11.)

On February 13, 2013, Defendants removed the case to this Court asserting that Plaintiff's CEPA claim is preempted by the Labor Management Relations Act, 29 U.S.C. § 185, *et seq*. ("LMRA"), and implicates unfair labor practices under the National Labor Relations Board ("NLRB"). Defendants contend federal subject matter jurisdiction exists because Plaintiff's CEPA claim requires interpretation of a collective bargaining agreement ("CBA") between the Union and a construction management organization,[5]

[3]According to Defendants, the NRCC affirmed the decision of the trial committee, established pursuant to the Union constitution, to expel Plaintiff. (Def.'s Br. 3, n. 2 and 3.)

[4]Defendants provide comprehensive background facts purportedly leading up to and surrounding the ultimate expulsion of Plaintiff, including details regarding the meeting of the trial committee. In particular, Defendants maintain that Plaintiff was expelled from membership in the Local 254 due to his harassment and discrimination of a fellow member based on his ethnicity. (Def.'s Br. 3.)

[5]The CBA appears to be between the Union and the Building Contractors Association of New Jersey. (Certification of Albert Kroll ("Kroll Certif.") Ex. W.)

multiple sections of the Union constitution pursuant to which Plaintiff was allegedly expelled, and certain Union job referral procedures. (Def.'s Br. 6-7.)[6]

More specifically, Defendants maintain that Plaintiff was expelled from membership in the Local 254 due to his harassment and discrimination of a fellow member in violation of the Union constitution and therefore an adjudication of Plaintiff's CEPA claim is "inextricably intertwined" with the constitutions's terms. (Def.'s Br. 3, 11.) Defendants further argue that Plaintiff's claim that he is prohibited from working as a union carpenter requires interpretation of the CBA and certain Union job referral procedures.[7]

On March 1, 2013, Plaintiff filed a motion to remand to state court. In support of remand, Plaintiff maintains that this matter is not a labor dispute, he is not a party to a CBA, he is not alleging that a CBA was violated, and that his Complaint is based solely on state law.

---

[6]The NRCC's by-laws provide for the establishment of job referral procedures. (Kroll Certif. Ex. BB.)

[7]Noting that Plaintiff was not an employee of the Union, Defendants also question the ability for Plaintiff to succeed on his CEPA claim. Defendants also point out that Plaintiff had previously filed twenty-four NLRB unfair labor practices charges certain of which asserted the same whistle-blowing activity, expulsion from membership, and inability to work that form the basis of Plaintiff's Complaint. (Def.'s Br. 2). According to Defendants, all of these charges were either dismissed or withdrawn by Plaintiff. (Def.'s Br. 4.) While informative, these facts do not impact the Court's analysis for purposes of remand.

## **DISCUSSION**

**A.**   **Removal Standard**

The federal removal statute provides that "[e]xcept as otherwise provided by

Congress, any civil action brought in a State court of which the district courts of the

United States have original jurisdiction, may be removed . . . to the district court of the

United States for the district and division embracing the place where such action is

pending."  28 U.S.C. § 1441(a).  "[T]he party asserting federal jurisdiction in a removal

case bears the burden of showing, at all stages of the litigation, that the case is properly

before the federal court."  Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007).

Removal is strictly construed and all doubts are resolved in favor of remand.  See

Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

**B.**   **Federal Jurisdiction**

A district court has original jurisdiction over cases that "arise under" federal law.

See 28 U.S.C. § 1331, 1441(a).  Pursuant to the "well-pleaded complaint" rule, a plaintiff

is ordinarily entitled to remain in state court so long as its complaint does not allege a

federal claim on its face.  See Franchise Tax Bd. of Cal. v. Contr. Laborers Vac. Tr. for S.

Ca., 463 U.S. 1, 10 (1983).  Federal jurisdiction cannot be established by a federal

defense or by challenging the merits of a claim.  See Caterpillar, Inc. v. Williams, 482

U.S. 386, 392 (1987).  However, an exception to the well-pleaded complaint rule is the

doctrine of complete preemption.  See, e.g., Lazorko v. Pa. Hosp.,  237 F.3d 242, 248 (3d

Cir. 2000) ("One exception to [the well-pleaded complaint rule] is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character."). The doctrine of complete preemption "creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." Id.

Notwithstanding that the Complaint is devoid of a federal claim on its face, Defendants argue that federal jurisdiction is present by virtue of the complete preemption of Plaintiff's CEPA claim by Section 301 of the LMRA. Section 301(a) of the LMRA provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185 (a); see Textron v. United Automobile, 523 U.S. 653, 656-57 (1998). Section 301 preemption exists for "[1] claims founded directly on rights created by collective bargaining agreements, and [2] . . . claims substantially dependent upon an analysis of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988) (alterations added); see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Preemption is not lightly inferred. See Voilas v. General Motors Corp., 170 F.3d 367, 375 n.1 (3d Cir. 1999). Preemption does not arise simply because a collective bargaining agreement may be involved in a dispute. See Lingle, 486 U.S. at 412; see also e.g., Bonilla v. Starwood Hotels Resorts Worldwide, Inc., 407 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) ("If the claim is plainly based on state law, Section 301 preemption is not mandated simply because the defendant

6

refs to the CBA in mounting a defense.").  Indeed, if the facts of a given case could give rise to an action under a CBA as well as a separate state law claim, preemption does not attach.  See Lingle, 486 U.S. at 408 (noting, in the event resolution of a state law claim "involves attention to the same factual considerations as the contractual determination, such 'parallelism' does not mandate preemption").  The fundamental question in evaluating Section 301 preemption is whether resolution of the state law claim turns on the meaning of a collective bargaining agreement.  See id. at 405-06.

## C.    Decision

Plaintiff's CEPA claim is not preempted by Section 301 of the LMRA.  The CEPA claim requires that Plaintiff show: (1) that he reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he performed whistle-blowing activity; (3) retaliatory action was taken against him; and (4) a causal connection between the whistle-blowing activity and the adverse employment action.  See, e.g., Blackburn v. United Parcel Service, 179 F.3d 81, 92 (3d Cir. 1999).  An adjudication of Plaintiff's state law CEPA claim does not turn on the interpretation of the CBA or the Union constitution.

Plaintiff does not base his claim on a breach of the CBA.  In fact, Plaintiff points out that he is not a party to the CBA.  Therefore, adjudication of Plaintiff's claim does not require an interpretation of the agreement.  (Pl.'s Br. 10.)

Despite the fact that the CBA does not form the crux of this suit, Defendants nevertheless maintain that Plaintiff's CEPA claim is preempted because it is somehow

"inextricably intertwined" with the Union constitution requiring an interpretation of its terms. That is not the case. Plaintiff's allegations are straightforward–that he was retaliated against for reporting Defendants' purported illegal activity. This case does not deal with Union issues. This case alleges harassment and retaliation due to Plaintiff's supposed reporting of illegal activity.

The considerations that actually apply in a CEPA analysis are "the conduct of the Plaintiff and the conduct and motivation of the Defendant." Synder v. Dietz & Watson, 837 F. Supp. 2d 428, 454 (D.N.J. 2011) (finding that state law employment claim not was preempted by Section 301). Here, a court's examination of Plaintiff's claims will not require interpretation of the Union constitution. Rather, the analysis calls for an inquiry into what Plaintiff and Defendants actually did and the reasons for their conduct. Defendants claim they had just cause to discharge the Plaintiff. By contrast, Plaintiff contends that the harassment and discharge was in retaliation for reporting Defendants' alleged illegal activity to the Justice Department. In other words, a classic employment case that does not require interpretation of the Union constitution.

Defendants also claim that resort to the CBA is necessary to resolve Plaintiff's claim that he is prohibited from working as a union carpenter. ("Def.'s Br. 13.") Plaintiff pleads as part of his damage claim that he "has suffered personal injuries including ... economic harm in that [P]laintiff is prohibited from working as a union carpenter...." (Compl. ¶ 11.) Defendants, pointing to certain job referral procedures, argue that Plaintiff can obtain work with both union and nonunion contractors without being

referred by the NRCC. (Def.'s Br. 13-14.)  This is of no moment.  Plaintiff's contention

that he no longer can work as a union carpenter goes to his claim for damages. A ruling

on Plaintiff's CEPA claim is not "substantially dependent" upon an interpretation of the

CBA or the Union constitution and therefore the cause of action is not preempted.  <u>See</u>

<u>Allis-Chalmers</u>, 471 U.S. at 220.


## CONCLUSION

For the reasons set forth, it is respectfully recommended that Plaintiff's motion to

remand be **GRANTED**.


  **s/Mark Falk**_____
**MARK FALK**
**United States Magistrate Judge**


**Dated: September 18, 2013**